**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLIANCE PARTY, and ROQUE "ROCKY" DE LA FUENTE, | : |
| | : |
| Plaintiffs, | : |
| | : |
| vs. | : **Civil Action No. 1:20-cv-2319** |
| | : |
| DISTRICT OF COLUMBIA BOARD OF ELECTIONS, | : |
| | : |
| Defendant. | : |
| | : |

## PLAINTIFFS' CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, ALLIANCE PARTY and ROQUE "ROCKY" DE LA FUENTE (hereinafter either "Roque De La Fuente" or "Mr. De La Fuente"), file this civil action for prospective equitable relief against Defendant DISTRICT OF COLUMBIA BOARD OF ELECTIONS (hereinafter "Defendant") requesting an emergency temporary injunction and/or preliminary injunctive relief barring Defendant from enforcing the August 5, 2020, deadline to file election petitions by third party presidential candidates to secure access to the 2020 District of Columbia general election presidential ballot as a result of the passage and enforcement by Defendant of bill B-23-0864 which lowered the signatures required to be filed with Defendant from 5,007 to 250 on August 6, 2020, the day after the deadline to file had already passed, thereby preventing third party candidates any notice that the signature requirement to secure ballot access would be lowered in time to take advantage of the reduced signature total in violation of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution for which Plaintiffs request immediate relief.   Plaintiffs request immediate emergency relief

1

enjoining Defendant from enforcing the deadline for third party presidential candidates to file election petitions with Defendant and extending the deadline to September 1, 2020.

1.      To secure access to the District's general election presidential ballot, independent and third-party presidential candidates are required to file petitions with Defendant containing the signatures of registered voters equal to 1% of all registered voters within the District of Columbia.  *See*, D.C. Official Code §§1001.08; 1-23.

2.      On May 13, 2020, responding to the impact of the COVID-19 pandemic raging within the District, the District of Columbia passed emergency legislation altering a variety of statutory requirements to minimize personal interactions within the District in support of social distancing requirements deemed necessary to combat the continuing transmission of the Wuhan novel coronavirus causing the COVID-19 pandemic.

3.      As part of the District's emergency response to the ongoing health crisis caused by the COVID-19 pandemic, the District dramatically reduced the number of signatures required to be filed with Defendant for every candidate for elective office in the District and gave those candidates substantial notice prior to the filing deadline to take advantage of the reduced signature requiments except independent and third party presidential candidates for the Office of President and Vice President of the United States.  *See*, Coronavirus Omnibus Emergency Amendment Act of 2020, §21(a) (codified, May 13, 2020, D.C. Act 23-317, 67 DCR 5235) and 67 D.C. Reg, 5235, §21; 2020 Quick Reference: Candidate Guide to Ballot Access, District of Columbia Board of Elections,   http://www.dcboe.org/dcboe/media/PDFFiles/Candidate-Guide-to-Ballot-Access-2020-Rev-6_2020.pdf (last visited August 20, 2020).

4.      The failure to extend coronavirus relief to the signature requirements for third-party and independent presidential candidates caused Plaintiffs to abandon their intended effort

to secure ballot access in the District of Columbia judging that in the midst of the COVID-19 pandemic and the constant public messaging directing citizens to engage in constant social distancing it would be nearly impossible to collect the required number of signatures to secure ballot access, would be a waste of money and campaign resources, and, more importantly, place their volunteers and professional petition circulators at increased risk of endangering their health by contracting the virus which causes COVID-19 as a result of the prolonged petition drive that would be necessary to attempt to collect the required number of signatures.

5.      Had Plaintiffs been given the same notice as all other candidates before the deadline to file signatures with Defendant that the total number of signatures would be reduced from 5,007 signatures to 250 signatures, Plaintiffs would have collected and timely filed the signatures and all other necessary documents to secure access to the District's 2020 general election presidential ballot.

6.      On August 6, 2020, the Mayor of Washington D.C., signed Bill B23-0864 into law, reducing the presidential petition signature requirement from 5,007 signatures to just 250 signatures.

7.      However, the deadline to file petitions for independent and third-party presidential candidates to secure access to the District's 2020 general election presidential ballot was August 5, 2020.

8.      As a result, independent and third party presidential candidates who refrained from collecting signatures when the signatures total was kept at 5,007 signatures because of the judged likelihood that it would be both nearly impossible to collect the required signatures in an environment where voters have been instructed by government officials at every level to avoid contact with strangers within 6-feet (hereinafter "social distancing") and because any prolonged

3

petition drive to attempt to collect the then required 5,007 signatures would place their volunteers and professional petition circulators at an unacceptable increased risk of contracting the virus which causes COVID-19 were denied any notice or ability to secure access to the District's 2020 general election ballot by submitting election petitions containing just 250 valid signatures as other third party and independent presidential candidates in violation of rights secured to Plaintiffs under the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION

9.      Jurisdiction lies in this Court under 28 U.S.C. § 1331, providing that the district courts of the United States shall have original jurisdiction of all civil actions arising under the Constitution of the United States.

10.     Moreover, jurisdiction lies under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a), the jurisdictional counterpart of 42 U.S.C. § 1983 as Plaintiffs allege a violation of rights guaranteed to them under the United States Constitution.

## VENUE

11.     Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  Furthermore, Defendants exercises statutory authority within this district and maintains their principal office within the District.

## PARTIES

12.     Plaintiff Alliance Party (hereinafter sometimes "Plaintiff Alliance Party" or "Alliance Party") was created on October 14, 2018, at a meeting in Denver, Colorado when three

4

political parties, the American Moderates Party, the Modern Whig Party and the American Party of South Carolina, agreed to merge to create the Alliance Party. On January 4, 2019, the Alliance Party officially registered with the Federal Elections Commission. Thereafter, the Independence Party merged with the Alliance Party in 2019; the American Alliance Party merged with the Alliance Party in 2019 and in 2020, the Independent Party of Connecticut formally merged with the Alliance Party.

13.     Plaintiff Alliance Party is governed by the Alliance Party National Committee. Jim Rex is the Chairman of Plaintiff Alliance Party National Committee. Plaintiff Alliance Party's mailing address is P.O. Box 1354, Anacortes, WA 98221.

14.     On April 25, 2020, Plaintiff Alliance Party conducted an online national convention and formally nominated Plaintiff Roque "Rocky" De La Fuente of California as its 2020 nominee for the Office of President of the United States and Darcy Richardson of Florida as its 2020 nominee for the Office of Vice President of the United States. Owing to automatic ballot status in certain states, Plaintiff Alliance Party's presidential ticket secured immediate ballot access for the 2020 general election in Delaware, South Carolina, Mississippi and Florida.

15.     Plaintiff Roque "Rocky" De La Fuente (hereinafter "Plaintiff"), is the 2020 nominee of Plaintiff Alliance Party for the Office of President of the United States.

16.     Plaintiff De La Fuente intends to seek ballot access for the 2020 presidential general election in every state where is he permitted to secure ballot access.

17.     Plaintiff De La Fuente is over the age of 35, is a natural born citizen of the United States of America, having been born in San Diego, California and has been a continual resident of the United States for over 35 years.

18.     Plaintiff De La Fuente satisfies all of the qualifications enumerated under the Presidential Qualification Clause of Article II, section 1, clause 5 of the United States Constitution.

19.     Defendant District of Columbia Board of Elections is an independent governmental agency of the District of Columbia charged with the responsibility for the administration, enforcement of the election laws and integrity of the electoral process within the District, including the laws, rules and regulations pertaining to ballot access and voter registration.  Defendant is specifically vested with the authority to collect election petitions and other documents from third party and independent presidential candidates necessary to secure access to the District's general election presidential ballot.

20.     At all relevant times, Defendant is engaged in state action under color of state law.

## FACTS

21.     Pursuant to Section 1-1001.08 of the D.C. Official Code, in order to secure access to the District's 2020 general election presidential ballot third party and independent presidential candidates must timely file signatures equal to 1% of the District's total voter registration on forms or petitions promulgated by Defendant (hereinafter "election petitions").

22.     In 2020, third party and independent presidential candidates were only permitted to collect signatures between June 12, 2020 and August 5, 2020.  *See*, Candidates Ballot Access Information, District of Columbia Board of Elections,

https://www.dcboe.org/Candidates/Candidate-Ballot-Access-Information (last  visited  Aug  20, 2020).

23.     In contrast, the last day for major political party candidates to file presidential nomination by message is September 1, 2020.   2020 Quick Reference: Candidate Guide to Ballot Access, District of Columbia Board of Elections, http://www.dcboe.org/dcboe/media/PDFFiles/Candidate-Guide-to-Ballot-Access-2020-Rev-6_2020.pdf (last visited August 20, 2020).

24.     The public lottery to determine ballot position is scheduled to take place on September 11, 2020.

25.     Accordingly, because the major political parties need only file presidential nomination by September 1, 2020, and the public lottery to determine ballot position does not take place until September 11, 2020, Defendant cannot start the process to construct the District's 2020 general election ballot until well after September 11, 2020.

26.     Defendant recommends that third party and independent presidential candidates to collect and file twice the number of signatures as required by Section 1-1001.08 of the D.C. Official Code to account for any invalid signatures discovered in the District's validation process after the election petition is filed with Defendant.   *See*, Candidates Ballot Access Information, District of Columbia Board of Elections, https://www.dcboe.org/Candidates/Candidate-Ballot-Access-Information (last visited August 20, 2020).

27.     Election petitions containing the required number of signatures collected from registered voters within the District must be filed with Defendant by August 5, 2020 at 5:00 pm.

28.     In December 2019, an outbreak of respiratory disease caused by a novel coronavirus emerged in Wuhan, China.  The respiratory disease caused by the novel coronavirus has been named COVID-19 and is a highly infectious disease that is spread by person-to-person

contact and, as of May 31, 2020, has resulted in over 103,000 deaths in the United States and 369,000 deaths worldwide.

29.     On January 30, 2020, long after the Wuhan novel coronavirus had spread well beyond China, the World Health Organization ("WHO") finally classified that COVID-19 constitutes a Public Health Emergency of International Concern.

30.     Immediately after the WHO declared COVID-19 a Public Health Emergency of International Concern, and as a result of confirmed cases of COVID-19 in the United States in California and Washington, on January 31, 2020, Health and Human Services Secretary Alex M. Azar declared a nationwide public health emergency retroactive to January 27, 2020.

31.     On February 27, 2020, to slow the spread of COVID-19, the United States Centers for Disease Control ("CDC") issued guidance recommending, among other things (such as frequent hand washing, and refraining from touching mouth and face with hands), that members of the public practice "social distancing" a practice designed to minimize close contact with others to keep sick individuals from coming in contact with healthy individuals in order to limit opportunities for transmission of the Wuhan novel coronavirus.  The CDC continues to recommend that everyone avoid large gatherings and crowds, and maintain a distance of approximately six feet from all strangers (i.e., all non-family members).

32.     On March 11, 2020, the WHO declared COVID-19 to be a global pandemic.

33.     On March 13, 2020, the President of the United States declared a national emergency, retroactive to March 2, 2020, due to uncontained community transmission of the Wuhan novel coronavirus within the United States and the resulting expanding outbreak of COVID-19.

34.     On May 13, 2020, responding to the impact of the COVID-19 pandemic raging within the District, the District of Columbia passed emergency legislation altering a variety of statutory requirements to minimize personal interactions within the District in support of social distancing requirements deemed necessary to combat the continuing transmission of the Wuhan novel coronavirus causing the COVID-19 pandemic.

35.     As part of the District's emergency response to the ongoing health crisis caused by the COVID-19 pandemic, the District dramatically reduced the number of signatures required to be filed with Defendant for every candidate for elective office in the District except independent and third party presidential candidates for the Office of President and Vice President of the United States.  *See*, Coronavirus Omnibus Emergency Amendment Act of 2020, §21(a) (codified, May 13, 2020, D.C. Act 23-317, 67 DCR 5235) and 67 D.C. Reg, 5235, §21; 2020 Quick Reference: Candidate Guide to Ballot Access, District of Columbia Board of Elections, http://www.dcboe.org/dcboe/media/PDFFiles/Candidate-Guide-to-Ballot-Access-2020-Rev-6_2020.pdf (last visited August 20, 2020).

36.     The District reduced the signature requirement for candidates for federal elective office from the lesser of 3,000 signatures or 1.5% of all registered voters to a flat 250 signature requirement.  *See*, D.C. Official Code § 1-1001.08(j)(4)(A) and (1)(B); D.C. Official Code § 1-123(d)(2).

37.     The District also reduced the signature requirements for local candidates to secure ballot access requiring them to collect less than 250 signatures to secure ballot access.

38      However, the District failed to lower the signature collection requirement for third party and independent presidential candidates to secure ballot access for the 2020 general election.

39.     The failure of the District to reduce the number of signatures required to secure access to the District's ballot for third party and independent presidential candidates while lowering ballot access requirements for all other candidates violated both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

40.     It is impossible to collect a signature on an election petition and maintain 6 feet of social distancing.

41.     Collecting signatures on election petitions during the current COVID-19 pandemic endangers not only the health and lives of District voters, but also the health and lives of petition circulators and the public at large.  If a petition circulator is infected of the Wuhan novel coronavirus and is not so aware, approaching voters to collect signatures for election petitions place everyone at risk of transmission of the virus responsible for COVID-19.

42.     The 5,007 signatures required to be collected by Plaintiff in an urban, densely populated implicated an increased health risk to Plaintiffs' volunteers and professional petition circulators.

43.     For instance, Governor Jay Inslee of Washington, in Proclamation 20-53 issued on May 5, 2020, modified certain ballot access requirements in the State of Washington acknowledging that:

> WHEREAS, not all candidates for public office have the means to pay the required filing fee to be included on the ballot for election, and the statutory alternative to paying the fee involves collecting a sufficient number of signatures from voters, which is very difficult to do by the May 15, 2020, deadline without the person-to-person contact currently prohibited by Proclamation 20-25 and as amended (Stay Home Stay Healthy); and
>
> ….
>
> Based on the above noted situation and under the provisions of RCW 43.06.220(2)(g), I also find that, as a result of the COVID-19 pandemic, strict compliance with [ballot access signature requirements] will prevent, hinder, or

delay action that is necessary to prevent person-to-person contact and to remove barriers that prevent some candidates for election in Washington State from being included on the ballot for election….

*See* Wa. Proclamation No. 20-53 (May 5, 2020).

44.     By way of further example, by Executive Order, Governor Cuomo indefinitely suspended the circulation of all election petitions in New York for independent and third-party candidates in New York.

45.     The District's unconstitutional failure to extend coronavirus relief to the signature requirements for third party and independent presidential candidates caused Plaintiffs to abandon their intended effort to secure ballot access in the District of Columbia judging that in the midst of the COVID-19 pandemic and the constant public messaging directing citizens to engage in constant social distancing it would be nearly impossible to collect the required number of signatures to secure ballot access, would be a waste of money and campaign resources, and, more importantly, place their volunteers and professional petition circulators at increased risk of endangering their health by  contracting the virus which causes COVID-19 as a result of the prolonged petition drive that would be necessary to attempt to collect the required number of signatures.

46.     On August 6, 2020, the Mayor of Washington D.C., signed Bill B23-0864 into law, reducing the presidential petition signature requirement from 5,007 signatures to just 250 signatures.

47.     However, the deadline to file petitions for independent and third-party presidential candidates to secure access to the District's 2020 general election presidential ballot was August 5, 2020.

48.    Had Plaintiffs been given notice two weeks before the deadline to file signatures with Defendant that the total number of signatures would be reduced from 5,007 signatures to 250 signatures, Plaintiffs would have collected and timely filed election petitions containing the required number of signatures and all other necessary documents to secure access to the District's 2020 general election presidential ballot.

49.    As a result, independent and third party presidential candidates who rationally refrained from collecting signatures when the signatures total was unconstitutionally kept at 5,007 signatures because of the judged likelihood that it would be both nearly impossible to collect the required signatures in an environment where voters have been instructed by government officials at every level to avoid contact with strangers within 6-feet (hereinafter "social distancing") and because any prolonged petition drive to attempt to collect the then required 5,007 signatures would place their volunteers and professional petition circulators at an unacceptable increased risk of contracting the virus which causes COVID-19 were denied any notice or ability to secure access to the District's 2020 general election ballot as other third party and independent presidential candidates in violation of rights secured to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution.

50.    The District's failure to reduce the signature requirement for third party and independent presidential candidates before the deadline to file their election petitions violates rights guaranteed to Plaintiffs under the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendments to the United States Constitution.

## CAUSES OF ACTION

### COUNT I
**(Equal Protection)**

51.    Plaintiffs reassert each preceding paragraph as if set forth fully herein.

52.     The District's reduction of the number of signatures required to secure access to the District's 2020 general election presidential ballot from 5,007 signatures to just 250 signatures after the August 5, 2020 deadline passed denied Plaintiffs equal protection of the laws because the District reduced the number of signatures for all other candidates to secure ballot access and gave those candidates significant advance notice before the deadline to file their signatures with Defendant –advance notice and the opportunity to plan a signature drive under the laws that would be applied in 2020 that was expressly and only denied to third party and independent presidential candidates.

53.     Accordingly, Defendant has denied Plaintiffs equal protection of the laws as required under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

54.     Plaintiffs demand the relief requested herein.

## COUNT II
### (Fourteenth Amendment Due Process Violation)

55.     Plaintiffs reassert each preceding paragraph as if set forth fully herein.

56.     The circulation of election petitions has been ruled "core political speech" afforded the highest protections under the First Amendment to the United States Constitution and applied to the States and the District of Columbia under the Fourteenth Amendment to the United States Constitution.

57.     Accordingly, the circulation of election petitions implicates a fundamental right of liberty to which the protections of the Due Process Clause of the Fourteenth Amendment to the United States Constitution applies, requiring fundamental notice before the District implemented a decrease in the number of signatures required to be collected and timely filed with Defendant to secure access to the District's 2020 general election ballot.

58.    The Due Process Clause requires timely notice of the requirements to secure access to the District's general election ballot so that Plaintiffs can plan their actions to secure ballot access based on the requirements of the law.

59.    The District's reduction of the number of signatures required to be collected to secure access to the general election ballot on August 6, 2020, after the August 5th deadline to file election petition had passed violates the fundament right to notice to determine what the law requires to secure access to the general election ballot.

60.    Despite the reduction of the number of signatures required to be collected from 5,007 to 250 the day after the August 5, 2020 deadline has passed, Defendant continues to enforce the August 5, 2020 deadline preventing Plaintiffs the opportunity to secure ballot access and plan  and execute a petition drive to collect 250 signatures for the 2020 general election in violation of rights guaranteed to Plaintiffs under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

61.    Plaintiffs demand relief for the deprivation of their rights guaranteed under the Fourteenth Amendment to the United States Constitution requested herein.

## COUNT III
### (First Amendment)

62.    Plaintiffs reassert each preceding paragraph as if set forth fully herein.

63.    Defendant's enforcement of the statutory deadline to file election petitions for third party and independent presidential candidates on August 5, 2020 while reducing the required number of signatures from 5,007 to 250 signatures on August 6, 2020 directly impaired rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution by denying Plaintiff the ability to conduct a petition drive to secure access to the District of Columbia's 2020 general election ballot under the rules signed into law on August 6,

14

2020 reducing the signature collection requirement from 5,007 signatures to 250 signatures which is a material change to the District's ballot access rules for third party and independent presidential candidates.

64.    Plaintiffs are suffering and will continue to suffer irreparable injury as a direct and proximate result of the violations alleged herein unless Defendant's strict enforcement of the August 5, 2020 deadline to file election petitions and all other documents are declared unlawful and enjoined as applied to the 2020 general election.

65.    Plaintiffs demand the relief requested herein.

## REQUESTED RELIEF

**NOW WHEREFORE**, Plaintiffs respectfully request the following relief from this Court:

(A)    Assume original jurisdiction over the above captioned action;

(B)    Issue an emergency temporary restraining order and/or preliminary injunction prohibiting Defendants from enforcing the August 5, 2020 deadline to file election petitions and other required documents to secure access to the District's 2020 general election presidential ballot;

(C)    Order Defendant to accept election petitions filed by third party presidential candidates to secure ballot access for the District's 2020 general election presidential ballot on or before 5:00 p.m. on September 1, 2020, the same date major political parties are required to nominate their presidential candidates by message;

(D)    Issue a declaratory judgment stating that the reduction of signature requirement after the deadline to file election petitions had passed and still enforced by Defendant violates

rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution;

(E)    Issue a permanent injunction prohibiting Defendant from altering signature requirements for third party presidential candidates in future elections without providing at least 2 weeks of notice to comply with the new signature requirement;

(F)    Order Defendants to pay Plaintiffs their costs and reasonable attorney's fees under 42 U.S.C. § 1988(b); and,

(G)    Retain jurisdiction over this matter and order Defendants to provide Plaintiffs any additional relief that this Court may deem appropriate and just.

Respectfully submitted,

Dated:  August 21, 2020                    __/s/ Thomas M. Dunlap_____
                                           Thomas M. Dunlap (DC Bar No. 471319)
                                           Benjamin S. Barlow (DC Bar No. 497795)
                                           Dunlap Bennett & Ludwig PLLC
                                           1717 Pennsylvania Ave NW
                                           Suite 1025
                                           Washington, DC 20007
                                           Phone: (202) 316-8558
                                           Fax: (855) 226-8791
                                           tdunlap@dbllawyers.com
                                           bbarlow@dbllawyers.com

                                           Paul A. Rossi (*pro hac vice* forthcoming)
                                           IMPG Advocates
                                           316 Hill Street, Ste. 1020
                                           Mountville, PA 17544
                                           (717) 681-8344
                                           Paul-Rossi@comcast.net

                                           *Counsel for Plaintiffs*