## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ALLIANCE PARTY, and ROQUE ROCKY DE LA FUNETE, | : | |
| | : | |
| | : | Civil Action No. 1:20-cv-2319 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA BOARD OF ELECTIONS, | : | |
| | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## REQUESTING EXPEDITED CONSIDERATION
## ELECTION LAW MATTER

## **TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………...……..…1

FACTS…………………………………………………...………………….…...…....2

STANDARD OF REVIEW……………………………………….……….…...........6

ARGUMENT………………………………………………………………...7

     I.    Plaintiffs are Likely to Succeed on the Merits…………….………………7

          A.    Overview…………………...………………………………...7

          B.    Ballot Access Implicates, as a Derivative of the Right to
                Vote, Fundamental Rights Protected Under the First and
                Fourteenth Amendments to the United States Constitution…....................11

          C.    The District's Discriminatory Failure to Reduce Signature
                Collection Requirements for Third Party and Independent
                Presidential Candidates to Secure Ballot Access During a
                Pandemic Until After the Deadline to File Nominating
                Petitions Had Passed and Defendant's Enforcement of the
                Original August 5, 2020, Deadline to File Their
                Nominating Petitions Violates Rights Protected Under the
                First and Fourteenth Amendments to the United States
                Constitution……………………………………………......................13

          D.    Discriminatory Treatment of Third Party and Independent
                Presidential Candidates Clearly Violate Rights Guaranteed
                To Plaintiffs Under the Equal Protection Clause of the
                Fourteenth Amendment to the United States Constitution………………15

     II.    Plaintiffs Will Suffer Irreparable Harm…………………………..…………....18

     III.    Defendant Will Suffer No Harm if the Requested Injunction
          Is Granted and the Equities Balance in Favor of Plaintiffs…………....................19

     IV.    The Requested Emergency Injunction is in the Public Interest……....................20

CONCLUSION……………………………………………………..………………22

**TABLE OF AUTHORITIES**

**Cases**

*Aamer v. Obama*,
  742 F.3d 1023 (D.C. Cir. 2014)…………………………………..………………6

*Abdullah v. Obama*,
  753 F.3d 193 (D.C. Cir. 2014)…………………………………….………………6

*Acosta v. Restrepo*,
  2020 WL 3495777 (D. R.I., June 25, 2020)…………………………………………..10

*American Civil Liberties Union v. Reno*,
  217 F.3d 162 (3rd Cir. 2000)…………………………………………………………18

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)……………………………………….........................10, 11

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012)…………………………………………………20

*Banks v. Booth*,
  No. 20-849, 2020 U.S. Dist. LEXIS 68287 (D.C.C., Apr. 19, 2020)….............................6

*B.H. v. Easton Area Sch. Dist.*,
  827 F.Supp. 2d 392 (E.D. Pa. 2011)……………………………….........................18

*Citizens for a Better Environment v. City of Park Ridge*,
  567 F.2d 689 (7th Cir. 1975)……………………………………………………18

*Clingman v. Beaver*,
  544 U.S. 581 (2005)……………………………………………………………11, 13

*Constitution Party of Virginia v. Virginia State Board of Elections*,
  2020 U.S. Dist. LEXIS (E.D. Va., July 15, 2020)………………….........................11

*Costa v. Bazron*,
  2020 U.S. Dist. LEXIS 91043 (D.D.C., May 24, 2020)…………....………………....7

*Cowen v. Ga. Sec'y of State*,
  2020 U.S. App. LEXIS 17427 (11th Cir., June 3, 2020)……………..………………10

*Davis v. Pension Benefit Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009)……………………………………….........................6

*Delaney v. Bartlett*,
     370 F.Supp. 2d 373 (M.D. N.C.
2004)………………………………………….......................................................15

*Elrod v. Burns*,
     427 U.S. 347 (1976)………………………………………………………...18

*Esshaki v. Whitmer*,
     2020 WL 1910154 (E.D. Mich., Apr. 20, 2020)…………………….....................10

*Eu v. San Francisco County Democratic Central Committee*,
     489 U.S. 214 (1989)………………………………………………….……………...12

*Fair Maps Nevada v. Cegavske*,
     2020 WL 2798018 (D. Nev., May 29, 2020)……………………...……………..10

*Gloria La Riva v. District of Columbia Board of Elections*,
     1:20-cv-01937 (D.D.C. 2020)………………………………………….....................9

*Gordon v. Holder*,
     721 F.3d 638 (D.C. Cir. 2013)………………………….…….……………………21

*Green Party of Pennsylvania v. Aichele*,
     89 F.Supp. 3d 723, 2015 WL 871150 (E.D. Pa., March 2, 2015)………........................15

*Green Party of Tennessee v. Hargett*,
     791 F.3d 684 (6th Cir. 2015)……………………………………..……………….15

*Hobby Lobby Stores, Inc. v. Sebelius*,
     723 F.3d 1114 (10th Cir. 2013)……………………………………………………20

*Jones v. McGuffage*,
     921 F.Supp. 2d 888 (N.D. Ill. 2013)……………………………………….......................18

*Johnson v. Cook County Officers Electoral Bd.*,
     680 F.Supp. 1229 (N.D. Ill 1988)……………………………….……………….18

*League of Women Voters of United States v. Newby*,
     838 F.3d 1 (D.C. Cir. 2016)……………………………………..……………..7

*Libertarian Party of Illinois v. Cadigan*,
     2020 WL 3421662 (7th Cir., June 21, 2020)……………………….……………10

*Marion County Committee of Indiana Democratic Party v. Marion County Election Bd.*,
     2000 WL 1206740 (S.D. Ind., August 3. 2000)…………………….......................18

iii

*Miller v. Thurston*,
    2020 WL 2617312 (W.D. Ark., May 25, 2020)…………….………………………...11

*Munro v. Socialist Workers Party*,
    479 U.S. 189 (1986)……………………………………….…………………12

*People Not Politicians v. Clarno*,
    2020 WL 3960440 (D. Org., July 13, 2020)…………………………......................11

*Pursuing Am's Greatness v. Federal Election Commission*,
    831 F.3d 500 (D.C. Cir. 2016)……………………………………….………………21

*Reclaim Idaho v. Little*,
    2020 WL 3490216 (D. Idaho, June 26, 2020)……………………......................10

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011)…………………………………………………...7

*Swanson v. Bennett*,
    219 F.Supp. 2d (M.D. Ala. 2002)………………………………………………18

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)…………………………………………….…………………14

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008)…………………………………………….…………………12

*Wesberry v. Sanders*,
    376 U.S. 1 (1964)…………………………………………………………………13

*Williams v. Rhodes*,
    393 U.S. 23 (1968)……………………………………………......................12

*Winter v. NRDC*,
    555 U.S. 7 (2008)………………………………………….…………………...7

## **Statutes**

U.S. CONST Amend I…………………………………………………………..*passim*

U.S. CONST Amend XIV………………………………………………………..*passim*

D.C. Code § 1-123(d) (2016)……………………….………………………....8

D.C. Code § 1-1001.08(f) (2016)………………………………...………………2, 3, 22

D.C. Code § 1-1001.08(j) (2016)………………………………………………8

D.C. Code § 1-1001.08(q) (2016)……………………………………......................3

D.C. Act 23-317 (May 13, 2020)…………………………………………………3

D.C. Act 23-382 (August 13, 2020) (Bill B23-0864)……………………………*passim*

§ 21, 67 D.C. Reg. 5235……………………………………...…………………...3

67 D.C. Reg. 9865……………………………………...…………………….5

**Other Authority**

https://www.dcboe.org/dcboe/media/PDFFiles/Candidate-Guide-to-Ballot-Access-2020-Rev-6_2020.pdf...........................................................................................11

## <u>INTRODUCTION</u>

If the Constitution has any meaning, if the Equal Protection Clause provides even the most basic concept of equality under the law, then the claims and requested emergency relief advanced by Plaintiffs in this litigation challenging the District's outrageous sequence of events in responding to the ongoing COVID-19 pandemic as it relates to candidates seeking access to the District's 2020 general election ballot must be easily and quickly granted by this Court.

Simply stated, the District granted significant <u>early</u> signature collection relief for every class of candidate seeking access to the District's 2020 general election ballot except third party and independent presidential candidates.  Every other candidate seeking access to the District's 2020 general election ballot was granted signature collection relief on March 13, 2020, allowing them to properly plan and take full advantage of the signature collection relief well in advance of the deadline for those candidates to collect and timely file their signatures with Defendant.  It was only after the District's failure to also reduce the signature collection requirement for third party and independent presidential candidates was challenged in a separate action in this court did the District provide belated signature collection relief  (probably to moot the action's clearly valid Equal Protection challenge) – a full eight days after the deadline to file election petitions, and without providing any extension of time for third party and independent presidential candidates to take advantage of the late signature collection relief to secure ballot access for third party and independent presidential candidates.

Granting every other political candidate early signature collection relief in the middle of the COVID-19 pandemic thereby giving them the time to properly plan their petition drive and to be able to efficiently allocate their volunteer and economic resources to match the lower signature collection requirements while denying the same relief to third party and independent presidential

1

candidates is a clear violation, at minimum of rights guaranteed to Plaintiffs under the First Amendment and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  Defendant's naked violation of the most basic protections of free speech and equal protection should prompt this Court to immediately grant Plaintiffs' emergency request for an extension of time to 12:00 noon on Tuesday, September 8, 2020 to collect and file the 250 signatures from registered voters that are now required to secure access to the District's 2020 general election presidential ballot – a deadline that permits Plaintiffs time to conclude a truncated petition drive to secure the now required 250 valid signatures to secure ballot access while permitting the District ample time to validate and certify the reduced number of signatures in time for the District to hold the public lottery to determine ballot position scheduled for September 11, 2020.  Further, Plaintiffs would consent to being placed at the bottom of the ballot in the event Defendant proves that 250 signatures could not be validated in time for the September 11, 2020, public lottery to determine ballot position –  though experience has demonstrated that other States routinely validate more than 250 signatures in a single day.

## FACTS

On April 25, 2020, Plaintiff Alliance Party nominated Plaintiff Roque "Rocky" De La Fuente as the Alliance Party's 2020 presidential nominee.  So far, since April 25th, Plaintiff De La Fuente has qualified for the 2020 general election presidential ballot in Alaska, Washington, Idaho, Utah, Colorado, Minnesota, Iowa, Wisconsin, Arkansas, Louisiana, Tennessee, Ohio, Vermont Maine, Delaware, Michigan, California, South Carolina, Mississippi, Florida and Rhode Island.

The District of Columbia, like most States, require third party and independent presidential candidates to file a nominating petition containing a certain number of valid signatures executed by registered voters to secure access to the general election ballot.  *See*, D.C. Code §1-1001.08(f)

(2016). The signature collection requirement is the primary method that candidates of political parties who have not demonstrated historic success at the ballot box to demonstrate that their candidates have sufficient support to require their access to the ballot.  Under the District's original ballot access statutory scheme third party and independent presidential candidates:

> [M]ay have the names of its candidates for President and Vice President of the United States printed on the general election ballot provided a petition nominating the appropriate number of candidates for presidential electors signed by at least 1 per centum of registered qualified electors of the District of Columbia, as shown by the records of the Board as of the 144th day before the date of the presidential election, is presented to the Board on or before the 90th day before the date of the presidential election.

DC Code §1-1001.08(f) (2016).  In 2020, third party and independent presidential candidates were only permitted to collect signatures between June 12, 2020 and August 5, 2020 and required to file their nominating petitions on or before 5:00 p.m. on August 5, 2020. DC Code §§1-1001.08(f), (q) (2016);  https://www.dcboe.org/dcboe/media/PDFFiles/Candidate-Guide-to-Ballot-Access-2020-Rev-6_2020.pdf at page 1.  Accordingly, the entire signature collection period fell within the middle of the ongoing COVID-19 pandemic.

In response to the ongoing COVID-19 pandemic, on May 13, 2020, the District passed emergency legislation reducing the signature collection requirements for all candidates seeking access to the District's general election ballot to a maximum of 250 signatures except for third party and independent presidential candidates who were the only candidates excluded from the early reduction of the signature collection requirement in the midst of the current health emergency.  *See*, § 21(a) of the Coronavirus Omnibus Emergency Amendment Act of 2020, DC Act 23-317 May 13, 2020; §21, 67 D.C. Reg. 5235.  Accordingly, every other candidate, except third party and independent presidential candidates were given ample notice, since May 13, 2020,

to conform and plan their ballot access petition drives within the District to only collect, at most, 250 valid signatures to secure access to the District's general election ballot.

Owing to the difficulty in securing signatures from voters in the middle of a pandemic and under circumstances where voters have been instructed by government officials at every level to maintain social distancing from strangers in public places, making it nearly impossible and incredibly expensive and inefficient (more so than in any other presidential election cycle) for third party presidential candidates to collect the then required 5,007 signatures to secure ballot access, Plaintiffs decided against launching a likely doomed effort to collect 5,007 signatures, so as not to place their volunteers at needless increased risk at contracting COVID-19 in the middle of a public health emergency to secure ballot access for the District's 2020 general election.  *See*, Declaration of Roque "Rocky" De La Fuente, attached hereto as Exhibit C.   Unlike all other candidates in the District, third party and independent presidential candidates were denied the opportunity to limit their volunteers exposure to the risk of contracting COVID-19 through a much more limited signature collection requirement of a maximum of 250 signatures to secure ballot access.

Suddenly, on August 13, 2020 – eight days after the deadline for third party and independent presidential candidates to file nominating petitions, the District's mayor signed Bill B23-0864, Act 23-382, into law reducing, without extending the time to file, the number of signatures required for third party and independent presidential candidates to secure access to the District's 2020 general election ballot to just 250 valid signatures.  Sec. 2 (d)(3) of District Bill B23-0864, Act 23-382, attached hereto as Exhibit A, provides in relevant part:

> "(2) For the November 3, 2020, General Election, a political party that does not qualify under subsection (d) of this section may have the names of its candidates for President and Vice President of the United States printed on the general election ballot provided that a petition nominating the appropriate number of candidates for presidential electors signed by at least 250 registered qualified electors of the District of Columbia, as shown by the records of the Board as of the 144th day

> before the date of the presidential election, is presented to the Board on or before
> the 90th day before the date of the presidential election."

*Id*. It should be noted that Bill B23-0864 was passed by the District's Council on August 3, 2020, but the Mayor intentionally refused to the Bill under August 13, 2020 to prevent candidates from taking advantage of the reduced signature requirement before the deadline to file nominating petitions on August 5, 2020, has passed. *See*, Legislative History of District Bill B23-0864, attached hereto as Exhibit B. It should also be noted that the new, lower signature requirement was not published in the DC Register at Vol 67, Page 9865, until August 21, 2020, when Plaintiffs became aware of the signature reduction. *See*, Legislative History of District Bill B23-0864, attached hereto as Exhibit B; Declaration of Roque "Rocky" De La Fuente, attached hereto as Exhibit C. Because the signature total was reduced after the deadline to file nominating petitions, third party and independent presidential candidates, such as Plaintiff De La Fuente, were denied any opportunity to make plana to execute a petition drive to comply with the reduced signature requirement to secure ballot access – an opportunity to plan a reduced signature drive afforded to every other class of candidates seeking access to the District's 2020 general election ballot.

Plaintiffs properly allege the clear violation of their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution as well as the First Amendment to the United States Constitution. Simply stated, the District cannot permit every other candidate the opportunity to plan a petition drive to collect a reduced number of signatures to secure ballot access where they can limit the threat of their volunteers contracting COVID-19 and deny the same protections to third party and independent presidential candidates, especially when the District reduced the signature collection requirement for third party and independent presidential candidates after the deadline to file nominating petitions had passed – an impossible circumstance not imposed on any other class of candidate seeking access to the

District's 2020 general election ballot.  Plaintiffs merely seek a short extension of time to collect the now required 250 valid signatures on election petitions within a time period where no other part of the District's election calendar will be disturbed. Plaintiffs request an Order of this Court extending the time for third party and independent presidential candidates to file nominating petitions to no later than 12:00 noon on Tuesday, September 8, 2020.  Plaintiffs' requested extension will permit the District to certify the reduced number of signatures well in time for the District's public lottery to determine ballot position on September 11, 2020, and if not, Plaintiffs consent to accepting the last spot on the ballot in order to preserve the District's current election calendar.

## STANDARD OF REVIEW

Just recently, this Court has reaffirmed the well-known standard that preliminary injunctive relief is "[A]n extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Banks v. Booth*, No. 20-849, 2020 U.S. Dist. LEXIS 68287 at *15 (D.C.C Apr. 19, 2020).  To obtain a preliminary injunction, a movant "must establish: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in his favor; and (4) that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  When seeking such relief, "the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (internal quotation marks omitted).  As this Court is aware the standard to obtain a preliminary injunction is the same as the standard to secure a temporary restraining order.

Prior to the Supreme Court's decision in *Winter v. NRDC*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008), courts in this circuit applied a "sliding-scale" approach under which a strong showing on one factor could make up for a weaker showing on another. *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). However, since the decision in *Winter*, the D.C. Circuit has suggested that "a likelihood of success is an independent, free-standing requirement," id. At 393 (quotation omitted), but it "has not yet needed to decide th[e] issue," *League of Women Voters of United States v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016). "In light of this ambiguity, the Court shall consider each of the factors and shall only evaluate the proper weight to accord the likelihood of success if the Court finds that its relative weight would affect the outcome." *Banks*, 2020 U.S. Dist. LEXIS 68287 at *7. *See also Costa v. Bazron*, 2020 U.S. Dist. LEXIS 91043 at *8-9 (D.D.C., May 24, 2020) (Moss, J.).

Plaintiffs contend that they clearly satisfy all four prongs of the preliminary injunction/TRO test such that the Court need not engage in any sliding-scale analysis in conformance with the Supreme Court's decision in *Winter*.

## ARGUMENT

I.    **Plaintiffs Are Likely to Succeed on the Merits.**

A.    **Overview**

On May 13, 2020, the District passed emergency legislation to amended various statutory requirements and deadlines to permit the citizens of the District to limit their exposure to the virus causing COVID-19. Section 21 of the emergency legislation recognized the impact and severe burden the pandemic has on the ability of independent and third-party candidates to collect the required number of signatures to secure access of the District's 2020 general election ballot. In response to the District's recognition of the severe impact that the pandemic has on the ability of

candidates to collect signatures from voters to secure ballot access, the District reduced the signature collection requirement for every political office except third party and independent presidential candidates to a maximum of 250 signatures.  For instance, the emergency legislation reduced the signature collection requirement for candidates for delegate to the United States House of Representatives, Chairman of the Council, At-Large Member of the Council from 1.5% of all registered voters, or 3,000, whichever is less, to 250 signatures.  *See*, D.C. Official Code §§ 1-1001.08(j)(4)(A), (j)(1)(B), 1-123(d)(2). All District and national elective offices, except for the offices of President and Vice President of the Untied States, had their ballot access signature requirements reduced to a maximum of 250 signatures from the date of the emergency legislation passed on May 13. 2020.  Accordingly, all third party and independent candidates, except those for President and Vice President of the United States, had adequate and substantial notice before the deadline to file their nominating petitions that they needed to only collect, a most, 250 valid signatures rather than the thousands of signatures normally required.  Therefore, all such candidates had the ability to limit the expenditure of scarce monetary and voluntary resources and plan for a much reduced and more likely to succeed petition drive to secure ballot access under the lower signature requirement afforded under the May 13th emergency legislation.  Only       third party and independent candidates for President and Vice President were forced to contend with collecting a minimum of 5,007 and over 10,000 signatures to safely secure ballot access with the prospect that any such petition drive would fail, even after spending increased economic and volunteer resources, in the middle of a pandemic environment that the District's emergency pandemic legislation acknowledged imposed a severe burden on their ability to secure ballot access.  *See*, D.C. Code § 1-1008.08(f)(2016).  It is only because of this acknowledged severe burden that Plaintiffs opted to abandon their planned petition drive to secure access to the District's

2020 general election presidential ballot.  Had the District reduced the signature collection requirement for third party presidential candidates down to the maximum 250 valid signatures that all other candidates needed to collect, Plaintiff De La Fuente would have launched his petition drive to secure ballot access.  *See*, Declaration of Roque "Rocky" De La Fuente, attached hereto as Exhibit C.

It was only in response to a federal challenge in this Court to the District's failure to extend the emergency pandemic legislation to third party and independent presidential candidates in *Gloria La Riva v. District of Columbia Board of Elections*, 1:20-cv-01937-RDM, that the District belatedly lowered the signature requirement for presidential candidates to 250 signatures.  The District took this action in an apparent effort to moot the federal challenge on First Amendment and Equal Protection grounds.  However, while the District Council passed this legislation on August 3, 2020, the Mayor waited until August 13, 2020, to sign to signature reduction requirement into law – eight days after the deadline to file nominating petition and without extending the deadline to file nominating petitions.  As a result, Plaintiffs were denied the same ability to plan for a 250-signature collection effort that every other third party and independent candidate for elective office was afforded.

The Supreme Court has made it clear that presidential elections are so unique that States have a reduced interest in imposing their most stringent ballot access requirements on presidential candidates.  The Supreme Court explained that:

> [I]n the context of a Presidential election, state-imposed restrictions implicate a uniquely important national interest. For the President and Vice President of the United States are the only elected officials who represent all the voters in the Nation.  Moreover, the impact of the votes cast in each State is affected by the votes cast for the various candidates in other States.  This in a Presidential election a State's enforcement of more stringent ballot access requirements, … has an impact beyond its own borders.  Similarly, the State has a less important interest in regulating Presidential elections than statewide or local elections, because the

outcome of the former will be largely determined by voters beyond the State's boundaries.

*Anderson v. Celebrezze*, 460 U.S. 780, 794-95 (1983).  As recently explained by the Eleventh Circuit Court of Appeals that while *Anderson* applies to all ballot access restrictions a court must put "a thumb on the scale in favor of ballot access when the candidate challenging the requirements are presidential candidates."  *Cowen v. Ga. Sec'y of State*, 2020 U.S. App. LEXIS 17427 at *13 (11th Cir., June 3, 2020).

Both in recognition of the severe impact on First Amendment rights requiring the collection of thousands of signatures in the middle of a pandemic where social distancing requirements have been put in place by government officials at every level and the reduced interest in imposing the most stringent ballot access requirements on third party and independent presidential candidates, courts across the county both reduced signature requirements and extended the filing deadline for presidential candidates to secure ballot access for the 2020 general election. *See e.g.*, *Libertarian Party of Illinois v. Cadigan*, 2020 WL 3421662, 2020 U.S. App. LEXIS 20161 (7th Cir., June 21, 2020) (reducing signature requirement and extending deadline to file election petitions due to "serious safety concerns" and refusing to stay the Court's Order); *Esshaki v. Whitmer*, 2020 WL 1910154 (E.D. Mich., Apr. 20, 2020), stay denied in part, 2020 WL 2185553 at *1 (6th Cir., May 5, 2020) (finding a sever burden from ballot access requirements and stay-at-home orders); *Reclaim Idaho v. Little*, 2020 WL 3490216 (D. Idaho, June 26, 2020), stay denied, No. 20-35584 (9th Cir., July 14, 2020) (reducing signature collection requirement for ballot initiatives in Idaho); *Acosta v. Restrepo*, 2020 WL 3495777 at *5 (D. R.I., June 25, 2020) (granting preliminary injunction to permit remote collection of ballot access petition signatures applying strict scrutiny analysis under *Anderson-Burdick* analysis and finding no compelling governmental interest in retaining higher signature collection requirements in the middle of a health emergency); *Fair Maps*

10

*Nevada v. Cegavske*, 2020 WL 2798018 (D. Nev., May 29, 2020) (enjoining ballot initiative signature deadline based on health, safety, and logistical concerns related to the COVID-19 pandemic); *Miller v. Thurston*, 2020 WL 2617312 at *4 (W.D. Ark,, May 25, 2020), stay denied, 2020 WL 2850223 (W.D. Ark., June 2, 2020), appeal filed, No. 20-2095 (8th Cir., June 2, 2020) (enjoining in-person and sworn affidavit requirement for ballot access election petitions); *People Not Politicians v. Clarno*, 2020 WL 3960440 at *7 (D. Org., July 13, 2020) (ordering Oregon to either place plaintiffs on the ballot or dramatically reduce signature requirements and extend the filing deadline); *Constitution Party of Virginia v. Virginia State Board of Elections*, 2020 U.S. Dist. LEXIS 125589 (E.D. Va., July 15, 2020) (enjoining signature collection requirement and reducing the signatures required for ballot access by 50% for third party and independent presidential candidates and extending certain deadlines for federal candidates).

**B.    Ballot Access Implicates, as a Derivative of the Right to Vote, Fundamental Rights Protected Under the First and Fourteenth Amendments to the United States Constitution.**

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the Supreme Court considered the impact of early filing deadline on independent presidential candidates and the voters who might support their candidacies.  The Court explained:

> By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas. Historically, political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream.  In short, the primary values protected by the First Amendment – 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' – are served when election campaigns are not monopolized by the existing political parties.

*Clingman v. Beaver*, 544 U.S. 581, 620-21 (2005), *quoting Anderson*, 460 U.S. at 794 (citations omitted).

Accordingly, "[r]estrictions upon the access of political parties to the ballot impinge upon the rights of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively, and may not survive scrutiny under the First and Fourteenth Amendments." *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986), *citing Williams v. Rhodes*, 393 U.S. 23, 30 (1968).  While States "may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Id*.  The Court's "primary concern is with the tendency of ballot access restrictions 'to limit the field of candidates from which voters might choose.'  Therefore, '[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.'" *Anderson*, 460 U.S. at 786 (Internal citations omitted). Where "the challenged law burdens the rights of political parties and their members, it can survive constitutional challenge only if the State shows that it advances a compelling state interest and is narrowly tailored to serve that interest." *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 222 (1989) (Internal citations omitted). *See also, Clingman*, 544 U.S. at 596-97 ("Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest); *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 451 (2008) (a severe restriction on a party's access to the ballot must be "narrowly tailored to serve a compelling state interest.")

In the instant action, Section 21 of the District's emergency legislation admits that imposing the normal signature collection requirement to secure ballot access in the middle of a pandemic imposes a severe burden.  Failure to permit Plaintiffs to plan for a petition drive under the lower 250 signature requirement until after the deadline to file nominating petitions had passed is both discriminatory and maintained the severe ballot access burden which Defendant cannot

12

show was narrowly tailored to advance a compelling governmental interest, especially where the District Council itself eventually passed Bill B23-0864 before the deadline to file nominating petitions had passed and only because the Mayor refused to sign until August 13, 2020, after the deadline had passed, were Plaintiffs unable to enjoy relief from the severe and discriminatory signature collection burden.

      **C.**    **The District's Discriminatory Failure to Reduce Signature Collection Requirements for Third Party and Independent Presidential Candidates to Secure Ballot Access During a Pandemic Until After the Deadline to File Nominating Petitions Had Passed and Defendant's Enforcement of the Original August 5, 2020, Deadline to File Their Nominating Petitions Violates Rights Protected Under the First and Fourteenth Amendments to the United States Constitution.**

The United States Supreme Court explained that: "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.  Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).  Justice O'Connor explained in her concurrence in the Court's decision in *Clingman v. Beaver*, 544 U.S. 581 (2005) that:

> Although the State has a legitimate – and indeed a critical – role to play in regulating elections, it must be recognized that it is not a wholly independent or neutral arbiter. Rather, the State is itself controlled by the political party or parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit. Recognition of that basic reality need not render suspect most electoral regulations.  Where the State imposes only reasonable and genuinely neutral restrictions on associational rights, there is no threat to the integrity of the electoral process and no apparent reason for judicial intervention.  As such restrictions become more severe, however, and particularly where they have discriminatory effects, there is increasing cause for concern that those in power may be using electoral rules to erect barriers to electoral competition.  In such cases, applying heightened scrutiny helps to ensure that such limitations are truly justified and that the State's asserted interests are not merely a pretext for exclusionary or anticompetitive restrictions.

*Clingman*, 544 U.S. at 603 (2005) (O'Connor, J. Concurring).  The rights at issue in this action are the associational rights of Plaintiffs to associate with like-minded voters in the District to permit

13

the voters of the District to cast their vote for the political candidates of their choice, and ballot access laws which discriminate between candidates violate rights clearly protected under the First Amendment and the Equal Protection Clause of the Fourteenth Amendments to the United States Constitution.  Plaintiffs also contend that the failure of the District to provide notice in time for Plaintiffs to take advantage of the reduction in the number of signatures to secure ballot access is also a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution which requires proper notice before a fundamental right can be impaired.  However, Plaintiffs recognize that the violation of Plaintiffs' Equal Protection Clause and First Amendment rights are so clear that this Court need not address Plaintiffs' Due Process claim to properly adjudicate the instant emergency motion.

Under First Amendment analysis, regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling governmental interest.  *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997).  However, regulations that impose a lesser burden are generally supported by a State's important regulatory interests and will usually be enough to justify reasonable, nondiscriminatory restrictions.  *Id*.  In the instant case, the District admits that the collection of an unreduced number of ballot access signatures in the middle of a pandemic is a severe burden, which is the reason given by the District for the reduction of signature collection to a maximum of 250 signatures in the emergency pandemic legislation of May 13, 2020.  The failure to reduce the signature total for third party and independent presidential candidates at the same time as all other candidates seeking access to the District's 2020 general election further implicates a discriminatory restriction which fails even if this Court determines that the 5,007 signature collection requirements is not a severe burden because discriminatory restrictions are always unconstitutional under the First Amendment, even those imposing less than

severer burdens. Accordingly, the reduction of the signature collection requirement for third party and independent presidential candidates on August 13, 2020 rather than May 13, 2020 is discriminatory and therefore a black-letter violation of Plaintiffs' rights under the First Amendment to the United States Constitution.  Therefore, Plaintiffs are likely to succeed on the merits of Plaintiffs' First Amendment claims.

> **D.    Discriminatory Treatment of Third Party and Independent Presidential Candidates Clearly Violate Rights Guaranteed to Plaintiffs Under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

Additionally, Equal Protection jurisprudence requires great vigilance in considering ballot access related statutes which discriminate against third party and independent candidates and those who would like to cast their ballots for them.  Federal courts have been unanimous in striking down ballot access rules which discriminate against third party and independent candidates, even when the discrimination falls short of functionally excluding such candidates from the ballot (which is not the case in this action as the reduction of ballot access signatures for third party and independent presidential candidates was signed into law after the deadline to file nominating petitions has passed thereby actually excluding third party presidential candidates who did not launch a petition drive when the law imposed what the District admits was a severe signature requirement in the middle of a pandemic).  *See e.g.*, *Green Party of Tennessee v. Hargett*, 791 F.3d 684 (6th Cir. 2015) (reaffirming the centrality of Equal Protection analysis in considering the constitutionality of ballot access laws which treat minor parties differently from major parties) *Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d 723, 2015 WL 871150 at *22 (E.D. Pa., March 2, 2015)) (Ballot access restrictions must not discriminate against minor parties); *Delaney v. Bartlett*, 370 F.Supp. 2d 373 (M.D. NC 2004) (Equal protection prohibits discrimination against minor parties or independents and between minor parties and independents).

15

The District's failure to reduce the signature collection requirement for third party presidential candidates to secure ballot access on May 13, 2020, and instead delay the reduction until after the deadline to file nominating petitions had passed implicates a clear discrimination between third party and independent presidential candidates and all other candidates competing for access to the District's general election ballot. This discrimination is facial, and there are no arguments that Defendant can advance to rehabilitate this discriminatory treatment. The failure to give third party and independent presidential candidates the same time to plan a petition drive to collect just 250 valid signatures in the middle of a world-wide pandemic is a text-book example of discriminatory treatment prohibited in ballot access schemes under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

It would not be a valid argument to suggest that third party and independent presidential candidates should have submitted to the discriminatory signature collection scheme that the District admits that in the middle of the current pandemic imposed a severe burden on the ability of independent and third-party candidates to collect the required number of signatures to secure access of the District's 2020 general election ballot, in the hope that the law, or a federal court would reduce the signature collection requirement at a later date – essentially imposing the uncertainty on third party presidential candidates of when and how long would they have to spend funds to continue to collect signatures and how much risk were they expected to place their volunteers at contracting COVID-19 in the hopes that they could either overcome the severe burden or hope for a later reduction in signatures, an uncertainty which itself fails equal protection analysis. To argue that the Equal Protection Clause permits a State to relieve some third party and independent candidates from severe signature collection requirements and provide them over 2 months to plan a reduced petition drive while failing to provide other candidates the certainty and

ability to plan a petition drive that might succeed in a pandemic finds no support in equal protection jurisprudence and, if adopted by this Court, would introduce a novel virus into the veins of constitutional law and equal protection jurisprudence.

Further, the fact that the District finally reduced the signature requirement for third party and independent presidential and the Mayor intentionally waited until after the deadline to file nominating petitions had passed demonstrates the patent discriminatory treatment afforded Plaintiffs.  In fact, it even suggests that the Mayor may have intentionally waited to sign Bill B23-0864 to prevent some presidential candidates from having any time to take advantage of the reduced signature collection requirement – especially a presidential candidate such as Kanye West, who may have attracted a significant number of Black voters in the District to potentially threaten the Mayor's Democratic Party nominee from the automatic 3 electoral votes that they take for granted in every presidential election year –the exact kind of partisan ballot access manipulation that Justice Sandra Day O'Connor warned against in her concurrence in *Clingman.*

In any event, the District's failure to lower the signature collection requirement for third party and independent presidential candidates on May 13, 2020 and the Mayor's failure to sign Bill B23-0864 before the deadline for third party and independent presidential candidates to file their nominating petitions on August 5, 2020 had passed, and the further failure to extend the deadline for these presidential candidates to file their nominating petitions after the signature collection requirement was reduced from 5,007 to 250 signatures on August 13, 2020, clearly violates the most basic tenets of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.   Accordingly, Plaintiffs are likely to succeed on the merits of their Equal Protection claims and the requested injunction and extension

17

of time to file nominating petitions to noon on Tuesday, September 8, 2020 should be immediately granted.

## II.     Plaintiffs Will Suffer Irreparable Harm.

As this Court is likely aware it is well settled that: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also American Civil Liberties Union v. Reno*, 217 F.3d 162, 180 (3rd Cir. 2000) (generally in First Amendment challenges a plaintiff who demonstrates and satisfies the likelihood of success prong of the preliminary injunction/temporary restraining order test "will almost certainly meet the merits prong of the test); *B.H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa. 2011) ("It is well-established that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'") (citations omitted); *Johnson v. Cook County Officers Electoral Bd.*, 680 F. Supp. 1229, 1232 (N.D. Ill 1988), *citing Citizens for a Better Environment v. City of Park Ridge*, 567 F.2d 689, 691 (7th Cir. 1975). Accordingly, wrongfully denying an otherwise qualified presidential candidate an opportunity to appear on the District's 2020 general election presidential ballot and denying citizens who would have voted for Plaintiff De La Fuente and the opportunity for Plaintiff Alliance Party to campaign for their first national ticket in the nation's capital and build their party for future elections constitutes irreparable harm. *Jones v. McGuffage*, 921 F. Supp. 2d 888, 901 (N.D. Ill 2013); *Swanson v. Bennett*, 219 F. Supp. 2d 1225, 1233-34 (M.D. Ala. 2002) (denial of ballot access constitutes irreparable harm for a candidate and noting there is no other adequate remedy at law for such a deprivation); *Accord*, *Marion County Committee of Indiana Democratic Party v. Marion County Election Bd.*, 2000 WL 1206740 at *11 (S.D. Ind., August 3, 2000) (Unpublished)

("Exclusion of an otherwise qualified candidate from the ballot would amount to irreparable harm to plaintiff, its candidate, and its members.").

It is beyond dispute that the denial of ballot access in an election that is imminent constitutes irreparable harm for a political candidate whose entire purpose is to appear on the ballot to compete for votes in the marketplace of ideas.  It is also clear that denial of an opportunity to secure ballot access for a political party's national ticket, especially in the nation's capital, deprives the party an opportunity to both compete for votes and start the process of building broader support among the voters of the District constitutes irreparable harm to Plaintiff Alliance Party and their prospective voters.  The opportunity to campaign and contest for voter support within the District is cyclical and transitory and cannot be recreated at a later date.  The 2020 presidential election will never take place again. Therefore, Plaintiffs clearly satisfy the irreparable harm prong of the temporary restraining order/preliminary injunction test.

### III.   Defendant Will Suffer No Harm If the Requested Injunction is Granted and the Equities Balance in Favor of Plaintiffs.

The balance of the equities prong of the temporary restraining order/preliminary injunction test clearly favor granting the requested injunction.  If the injunction and extension of time to file nominating petitions is not granted, Plaintiffs will suffer the irreparable harm described above. Plaintiff De La Fuente will be kept off the ballot through no fault of his own and Plaintiff Alliance Party will be deprived of campaigning on its political agenda to the voters of the District and denied then opportunity to begin the process of building their party within the District.

Extending the deadline to file nominating petitions to noon on September 8, 2020, will visit no harm on Defendant.  As set forth in the attached Declaration of Paul A. Rossi, Esq., the validation of a signature, using the District's searchable voter registration computer database takes at most between 1 and 2 minutes. *See*, Declaration of Paul A. Rossi, Esq., attached hereto as

Exhibit D.  Accordingly, 500 signatures (the number of signatures that Plaintiffs will file) will take

500 to 1,000 minutes of staff time or between 8 and 16 hours of total staff time – the same amount

of time that would have had to be spent by Defendant's staff had the Mayor signed Bill B23-0864

before the statutory August 5th deadline.  Stated a different way, a single staff member can validate

500 signatures in just 2 business days – 2 staff members working on validation will take just 1

business day, well before the scheduled September 11th public lottery to determine ballot position

is scheduled to be held – the next event on the District's election calendar.           Furthermore,

if Defendant can prove to this Court that the validation of Plaintiffs' signatures cannot be

accomplished before the September 11th public lottery for ballot position, Plaintiffs will consent

to the last spot on the ballot as a condition to the grant of the requested emergency relief.  Plaintiff

would also note that any minor administrative inconvenience is of the District's own doing –

specifically the Mayor who could have signed Bill B23-0864 a few days before the deadline for

third party and independent presidential candidates to file their nominating petitions and other

documents with Defendant.  It is only because of the dilatory action of the Mayor to intentionally

sign Bill B23-0864 after the deadline had passed that the parties find themselves in their current

position, such that Defendant cannot be heard to complain of the need to validate Plaintiffs' ballot

access signatures between September 8 and September 11th.  Accordingly, the balance of the

equities also weighs in favor of Plaintiffs' requested emergency relief.

## IV.    The Requested Emergency Injunction is in the Public Interest.

It is clear that the requested emergency injunction is in the public interest.  "[I]t is always

in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby*

*Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc) (*quoting Awad v. Ziriax*,

670 F.3d 1111, 1131-32 (10th Cir. 2012)), *aff'd* 134 S.Ct. 2751 (2014). The public interest here

favors issuance of the requested emergency relief for reasons similar to those discussed with respect to the other preliminary injunction factors: "[E]nforcement of an unconstitutional law is always contrary to the public interest." *Pursuing Am.'s Greatness v. Federal Election Commission*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)); *see also League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action.")  There is in fact a "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters*, 838 F.3d at 12, because "it may be assumed that the Constitution is the ultimate expression of the public interest," *Gordon*, 721 F.3d at 653 (quotation marks omitted), the public interest is, therefore, served by ensuring that Defendant does not irrevocably offend the First Amendment and Equal Protection Clause of the United States Constitution which this case is being litigated.

Further, the fact that the District of Columbia Council passed Bill B23-0864 before the deadline for Plaintiffs to file their nominating petition had passed, and was only prevented from effecting the interest of the District Council because the Mayor refused to sign the Bill into law until on August 13, 2020 – a full eight days after the deadline to file nominating petitions had passed, shows that extending the deadline to file nominating petitions to noon September 8,. 2020, will in fact advance the District Council's own belated intent to permit third party and independent presidential candidates to secure ballot access upon the submission of only 250 valid signatures by District voters.

Accordingly, the requested emergency relief is clearly in the public interest.

## **CONCLUSION**

For all the foregoing reasons, this Court should: (1) Declare the District's discriminatory failure to permit third party and independent presidential candidates to secure ballot access upon the filing of 250 valid signatures of District voters until after the August 5, 2020, deadline to file nominating petitions had passed unconstitutional and in violation of rights guaranteed to Plaintiffs under the First and Fourteenth Amendments to the United States Constitution; and, (2) Order that Defendant are enjoined from enforcing the August 5, 2020 deadline for third party and independent presidential candidates to file their nominating petitions and all other documents necessary to secure access to the District's 2020 general election presidential ballot. *See*, D.C. Official Code § 1-1001.08(f).   In furtherance of this injunctive relief, the Court should order Defendant to accept Plaintiffs' nominating petitions and all other required documents necessary to secure access to the District's 2020 general election presidential ballot until noon on September 8, 2020.

Respectfully submitted,

Dated:  August 28, 2020

 /s/ Thomas M. Dunlap
Thomas M. Dunlap (DC Bar No. 471319)
Benjamin S. Barlow (DC Bar No. 497795)
Dunlap Bennett & Ludwig PLLC
1717 Pennsylvania Ave NE, Suite 1025
Washington, DC 20007
Phone: (202) 316-8558
Fax: (855) 226-8791
tdunlap@dbllawyers.com
bbarlow@dbllawyers.com

Paul A. Rossi (*pro hac vice* forthcoming)
IMPG Advocates
316 Hill Street, Ste. 1020
Mountville, PA 17544
(717) 681-8344
Paul-Rossi@comcast.net

*Counsel for Plaintiffs*

22

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that on August 28, 2020, a copy of the foregoing was filed electronically using the ECF system.  I further certify that the foregoing will be served via private processor to the defendants at the address below:

District of Columbia Board of Elections
1015 Half Street SE
Suite 750
Washington, DC 20003

/s/ Thomas Dunlap
Thomas M. Dunlap

23