# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIANCE PARTY, *et al.*,<br><br>              Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA<br>BOARD OF ELECTIONS,<br><br>              Defendant. | Civil Action No. 20-2319 (JEB) |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 2

   I.    Statutory Overview ........................................................................ 2

   II.   COVID-19 in the District of Columbia........................................... 3

   III.  Plaintiffs' Allegations and Procedural History................................ 6

LEGAL STANDARDS ............................................................................... 6

ARGUMENT .............................................................................................. 8

   I.    Plaintiffs' Lawsuit Should Be Dismissed for Lack of Subject Matter
       Jurisdiction. ................................................................................... 8

      A.  The Lawsuit Is Now Moot. ....................................................... 8

          1.   There Is No Present Case or Controversy To Resolve. ........................ 8

          2.   No Mootness Exception Applies............................................. 9

      B.  Plaintiffs Lack Standing To Bring the Claims They Have Raised. ........... 11

   II.   Plaintiffs' Lawsuit Warrants Dismissal for Failure To State a Claim.......... 14

      A.  Plaintiffs Have Not Stated a Claim Under the First or Fourteenth
          Amendments. ............................................................................ 14

      B.  The District Did Not Violate Plaintiffs' Due Process Rights. .................... 20

CONCLUSION............................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77 (D.D.C. 2015) ........................... 13

*Am. Bar Ass'n v. FTC*, 636 F.3d 641 (D.C. Cir. 2011) ................................. 8

*Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44 (D.C. Cir. 2016) ................................. 7

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ....................................... 14, 16

*Aref v. Lynch*, 833 F.3d 242 (D.C. Cir. 2016) ................................. 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................. 7

*Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939 (D.C. Cir. 2005) .... 10, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 7

*Burdick v. Takushi*, 504 U.S. 428 (1992) ......................................... 15, 16

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001) ................................. 20

*Camreta v. Greene*, 563 U.S. 692 (2011) ................................. 8

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................... 10

*Clements v. Fashing*, 457 U.S. 957 (1982) ................................. 15

*Comm. In Solidarity with the People of El Salvador v. Session*, 929 F.2d 742 (D.C. Cir. 1991) ................................. 7

*Comm. on the Judiciary of the United States House of Representatives v. McGahn*, 968 F.3d 755 (D.C. Cir. 2020) ................................. 11

*Conyers v. Reagan*, 765 F.2d 1124 (D.C. Cir. 1985) ....................................... 8

*De La Fuente Guerra v. Toulouse-Oliver*, 752 F. App'x 579 (10th Cir. 2018) ........... 21

*De La Fuente v. Lamone*, Civil Action No. 16-2743, 2017 WL 2439143 (D. Md. June 5, 2017) ................................. 9

*De La Fuente v. Padilla*, 930 F.3d 1101 (9th Cir. 2019) ........................................... 17

*Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316 (D.C. Cir. 2009) .. 10, 11

*DeSilva v. Donovan*, 81 F. Supp. 3d 20 (D.D.C. 2015) ................................. 13

*Dixon v. District of Columbia*, 666 F.3d 1337 (D.C. Cir. 2011)................................... 14

*Hardaway v. District of Columbia Hous. Auth.*, 843 F.3d 973 (D.C. Cir. 2016) ......... 8

*Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568 (D.C. Cir. 2010) 9

*Jackson v. District of Columbia*, 826 F. Supp. 2d 109 (D.D.C. 2011) ......................... 7

*Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) ................................ 13

*Jenness v. Fortson*, 403 U.S. 431 (1971)....................................................... 16, 17, 19

*Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 845 F. Supp. 2d 288 (D.D.C. 2012) ........................................................................................... 12

*Kamins v. Board of Elections for the District of Columbia*, 324 A.2d 187 (D.C. 1974) ..................................................................................................................... 18, 19

*Libertarian Party of Ill. v. Pritzker*, 455 F. Supp. 3d 738 (N.D. Ill. 2020) ............... 18

*Libertarian Party of New Hampshire v. Gardner*, 843 F.3d 20 (1st Cir. 2016) ........ 16

*Libertarian Party v. District of Columbia Bd. of Elections & Ethics (Libertarian Party I)*, 768 F. Supp. 2d 174 (D.D.C. 2011)............................................................ 14

*Libertarian Party v. District of Columbia Bd. of Elections & Ethics (Libertarian Party II)*, 682 F.3d 72 (D.C. Cir. 2012) ............................................................ 15, 18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)............................................... 11, 12, 20

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ................................................................ 20

*Murphy v. Hunt*, 455 U.S. 478 (1982)........................................................................ 10

*Mykonos v. United States*, 59 F. Supp. 3d 100 (D.D.C. 2014) ..................................... 7

*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) .................................................. 12

*Nurriddin v. Bolden*, 818 F.3d 751 (D.C. Cir. 2016).................................................... 7

*O'Shea v. Littleton*, 414 U.S. 488 (1974)...................................................................... 8

*Palmore v. United States*, 411 U.S. 389 (1973) ........................................................... 2

*Paul v. Davis*, 424 U.S. 693 (1976)............................................................................ 21

*People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416 (D.C. Cir. 2005)......................................................................................................................... 10

*Pinson v. United States Dep't of Justice*, 273 F. Supp. 3d 1 (D.D.C. 2017) .............. 13

*Planned Parenthood of Wisc., Inc. v. Azar*, 942 F.3d 512 (D.C. Cir. 2019 ............... 10

*Reid v. Hurwitz*, 920 F.3d 828 (D.C. Cir. 2019) ............................................................. 9

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ......................................... 12

*St. Pierre v. Norton*, 498 F. Supp. 2d 214 (D.D.C. 2007) ........................................... 13

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ........................................................................ 13

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997).................................. 15

*Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373 (D.D.C. 2015) ........................... 7

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017)................................ 13

*Turner v. Rogers*, 564 U.S. 431 (2011) ........................................................................ 11

*Williams v. Rhodes*, 393 U.S. 23 (1968) ............................................................. 14, 16

**Statutes**

42 U.S.C. § 1983................................................................................................................. 6

D.C. Code § 1-1001.08(b)(3A) ............................................................................... 4, 17, 21

D.C. Code § 1-1001.08(d) .................................................................................................. 3

D.C. Code § 1-1001.08(f) ................................................................................................. 17

D.C. Code § 1-204.12(a) ............................................................................................... 5, 9

D.C. Code §§ 1-1301 ......................................................................................................... 2

D.C. Code §§ 1-201.01 ...................................................................................................... 2

Pub. L. No. 376, 69 Stat. 699 (1955) ............................................................................... 2

Pub. L. No. 87-389, 75 Stat. 817 (1961) ...................................................................... 2, 3

Pub. L. No. 93-92, 87 Stat. 311 (1973) ............................................................................ 3

## Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................. 6

Fed. R. Civ. P. 12(b)(6) ............................................................................. 7

## Constitutional Provisions

U.S. Const. amend. XXIII, § 1 ................................................................. 2

U.S. Const. Art. I ...................................................................................... 2

## Legislative History

H. Rep. No. 93-258 (1973) .......................................................... 2, 3, 17, 19

S. Rep. No. 869 (1961) ............................................................................ 18

S. Rep. No. 93-371 ....................................................................... 3, 17, 19

## Regulations

3 DCMR § 1503.01 ..................................................................................... 3

3 DCMR §§ 1500-1508 ............................................................................ 17

## INTRODUCTION

Plaintiffs Alliance Party and Roque "Rocky" De La Fuente filed this lawsuit against the District of Columbia Board of Elections (BOE or the District), contending that they suffered violations of their First Amendment, equal protection and due process rights when the D.C. Council (the Council) passed emergency legislation on July 28, 2020, signed into law on August 13, 2020, reducing the signature requirement for third-party presidential candidates seeking to appear on the District's November 2020 general election ballot. Ballots have now been printed, the election is now over, and the emergency legislation plaintiffs challenge will have no effect in future elections. Their claims are therefore moot. Regardless, plaintiffs lack standing because they have not alleged any injury fairly traceable to BOE, the only named defendant, nor can their alleged injuries be redressed by the relief they seek.

Additionally, plaintiffs have not stated a claim for relief on the merits. Plaintiffs base their claims on the Council's passage of emergency legislation lowering the signature requirement for third-party presidential candidates, contending the law was not enacted until after the August 5, 2020 deadline to submit a petition. The Council, however, passed the legislation more than a week before that deadline. Plaintiffs' rights of political association, equal protection and due process were not violated by legislation that left them ample time to acquire the necessary signatures. Plaintiffs' Complaint should be dismissed with prejudice.

# BACKGROUND

## I.  <u>Statutory Overview</u>

The United States Constitution grants Congress "plenary" power to legislate for the District. *See Palmore v. United States*, 411 U.S. 389, 397 (1973) (citing U.S. Const. Art. I, § 8, clause 17). Congress served as the sole legislative body for the District until passage of the Home Rule Act in 1973, which delegated limited legislative authority to the D.C. Council subject to Congressional approval. *See generally* D.C. Code §§ 1-201.01 *et seq.*

In 1955, Congress passed the District of Columbia Election Act (the Election Act), providing for the direct election of national party committee members and convention delegates by District residents. Pub. L. No. 376, 69 Stat. 699 (1955); D.C. Code §§ 1-1301 *et seq.*; *see also* H. Rep. No. 93-258, at 1 (1973). On March 29, 1961, the states ratified the 23rd Amendment to the Constitution, which expressly provides that the District shall appoint electors to the Electoral College "in such a manner as Congress may direct," U.S. Const. amend. XXIII, § 1, and that Congress "shall have the power to enforce" those mandates "by appropriate legislation," *id.* § 2. Accordingly, later that year, Congress amended the Election Act to include provisions by which candidates for President and Vice President of the United States could appear on the ballot in District elections. Pub. L. No. 87-389, 75 Stat. 817 (1961) (1961 Amendment). Among other things, the 1961 Amendment provided that candidates of any political party that had elected a U.S. President since 1950 would automatically

appear on the ballot.[1] *Id.* Third-party candidates for President and Vice President could also appear on the ballot upon submitting a timely petition to BOE "signed by at least 5 per centum of registered qualified electors of the District of Columbia." *Id.*

Congress, however, amended the Election Act again twelve years later to reduce the signature requirement from 5 percent to 1 percent of registered voters in the District. Pub. L. No. 93-92, 87 Stat. 311 (1973) (1973 Amendment); *see also* 3 DCMR § 1503.01 (BOE regulation implementing one-percent requirement). The Committee Reports from both the House and Senate Committees on the District of Columbia (collectively, the Committee Reports) observed that at the time, five percent of registered District voters amounted to roughly 15,000 signatures a non-major-party candidate would have to collect, which, in Congress's judgment, "place[d] unreasonable burdens upon both potential candidates and the [D.C.] Board of Elections." H. Rep. No. 93-258, at 3; S. Rep. No. 93-371, at 3 (1973). The Committees observed that as of 1968, 42 states required non-major-party Presidential candidates to obtain signatures from at most one percent of registered voters in order to appear on the ballot. *Id.* The Committees concluded that this widespread practice "suggests that the 1% required proposed by [the amendment] is entirely reasonable." *Id.*

## II.   COVID-19 in the District of Columbia

On March 11, 2020, Mayor Muriel Bowser issued a Declaration of Public Emergency and a Declaration of Public Health Emergency in response to the global

---

[1]   This provision was later changed to automatically include on the ballot candidates of any party that received 7,500 votes in the previous election. D.C. Code § 1-1001.08(d).

outbreak of COVID-19, an infectious respiratory illness caused by the novel coronavirus. *See* Mayor's Order 2020-045, March 11, 2020, available at https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/MO.DeclarationofPublicEmergency03.11.20.pdf (last visited Nov. 4, 2020); Mayor's Order 2020-046, March 11, 2020, available at https://mayor.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/MO.DeclarationofPublicHealthEmergency03.11.20.pdf (last visited Nov. 4, 2020). Shortly thereafter, on March 30, 2020, Mayor Bowser issued a Stay at Home Order, restricting when District residents could leave their homes, gather in groups, or use communal spaces. *See* Mayor's Order 2020-054, March 30, 2020, available at https://coronavirus.dc.gov/sites/default/files/dc/sites/coronavirus/page_content/attachments/Mayor%27s%20Order%202020-054%20Stay%20at%20Home.pdf (last visited Nov. 4, 2020).

On May 13, 2020, Mayor Bowser signed into law the Coronavirus Omnibus Emergency Amendment Act of 2020 (May 13, 2020 Emergency Act). *See* 67 D.C. Reg. 5235 (May 22, 2020), available at https://lims.dccouncil.us/downloads/LIMS/44622/Signed_Act/B23-0750-SignedAct.pdf (last visited Nov. 4, 2020). Among other things, the law reduced the number of signatures third-party candidates for several local and federal offices were required to collect to appear on the November 2020 general election ballot in the District. The law also permitted candidates to gather signatures electronically rather than in person. *See* D.C. Code § 1-1001.08(b)(3A). The Council left unchanged the requirement that third-party candidates for the offices of President and Vice President must collect signatures from one percent of eligible

4

District voters in order to appear on the ballot. For the November 2020 election, that number would have been 4,967 signatures. *See* Decl. of Alice P. Miller (Miller Decl.) [12-1] ¶ 3. Two weeks later, Mayor Bowser lifted the stay-at-home order effective May 29, 2020, amid the phased reopening of District businesses, government operations, services, and activities. *See* Mayor's Order 202-067, May 27, 2020, available at https://coronavirus.dc.gov/sites/default/files/dc/sites/coronavirus/page_content/attachments/MO2020-067.pdf (last visited Nov. 4, 2020).

On July 28, 2020, eight days before the petition deadline, the D.C. Council unanimously passed legislation reducing the required signature threshold for third-party presidential candidates to 250 valid signatures for access to the November 2020 general election ballot. *See* D.C. Council, General Election Preparations Emergency Amendment Act of 2020 (July 2020 Amendment), Sec. 2(d)(3), available at https://lims.dccouncil.us/downloads/LIMS/45462/Signed_Act/B23-0864-Signed_Act .pdf (last accessed Nov. 4, 2020); July 2020 Amendment Legislative History [4-3] at 2, available at https://lims.dccouncil.us/Legislation/B23-0864 (last visited Nov. 4, 2020). The Council transmitted the legislation to the Mayor on August 3, 2020, and the Mayor signed it into law on August 13, 2020. *See* July 2020 Amendment Legislative History at 2-3; 67 D.C. Reg. 9865, *codified as amended at* D.C. Code § 1-1001.08(f)(2). Because the July 2020 Amendment was passed as emergency legislation, it expires automatically after 90 days. *See* D.C. Code § 1-204.12(a).

III.     <u>Plaintiffs' Allegations and Procedural History</u>

Plaintiffs filed this lawsuit on August 21, 2020. Compl. [1].[2] Plaintiffs then filed a motion for emergency injunctive relief on August 28, 2020 [4], which was denied on September 4, 2020. *See* Sept. 4, 2020 Minute Order.

In their Complaint, plaintiffs assert three causes of action under 42 U.S.C. § 1983, contending that BOE violated their rights under the First and Fourteenth Amendments, based on the Council's reduction of the signature-gathering requirement for Presidential candidates after the August 5, 2020 deadline to submit a petition. Compl. ¶¶ 51-65. In their prayer for relief, plaintiffs ask that the Court (1) grant preliminary relief enjoining the enforcement of the August 5, 2020 petition deadline; (2) order the District to accept petitions through September 1, 2020; (3) declare the District's reduction of the signature-gathering requirement for presidential candidates unconstitutional; (4) permanently enjoin the District from changing signature requirements in future elections "without providing at least 2 weeks of notice to comply with the new signature requirement"; (5) order the District to pay their attorney's fees and costs; and (6) provide any other relief deemed appropriate. *See* Compl. at 15-16.

LEGAL STANDARDS

A case must be dismissed any time a court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Mykonos v. United States*, 59 F. Supp. 3d 100, 103 (D.D.C.

---

[2]      Plaintiffs filed an errata Complaint on August 26, 2020. *See* Compl. [2]. All further citations to the Complaint refer to the errata version.

2014). This is so when the underlying controversy has become moot, *see Comm. in Solidarity with the People of El Salvador (CISPES) v. Session*, 929 F.2d 742, 744 (D.C. Cir. 1991), and when the plaintiff lacks standing, *see Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016). "[I]n deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case." *Toth v. Wells Fargo Bank, N.A.*, 82 F. Supp. 3d 373, 376 (D.D.C. 2015) (citations and internal quotation marks omitted).

Dismissal is also warranted when a party has failed to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the well-pleaded factual allegations must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011). Courts need not accept as true conclusory "assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679. The Court "need not … accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (alterations adopted) (internal quotation marks omitted).

## ARGUMENT

I. **Plaintiffs' Lawsuit Should Be Dismissed for Lack of Subject Matter Jurisdiction.**

    A. **The Lawsuit Is Now Moot.**

        1. **There Is No Present Case or Controversy To Resolve.**

Federal courts may only hear "cases" or "controversies." U.S. Const. Art. III, § 2. This requires that an ongoing dispute between the parties exist "not only at the outset of litigation, but throughout its course." *Camreta v. Greene*, 563 U.S. 692, 701 (2011). A court must therefore assess "whether events subsequent to the filing of the complaint 'have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Hardaway v. District of Columbia Hous. Auth.*, 843 F.3d 973, 978 (D.C. Cir. 2016) (quoting *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011)); *see O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects."). Even declaratory relief cannot be granted once the underlying case or controversy has become moot. *See Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985) ("The Article III case or controversy requirement is as applicable to declaratory judgments as it is to other forms of relief.").

Here, plaintiffs have asserted a controversy that is no longer live: They filed this lawsuit to place Mr. De La Fuente on the November 2020 election ballot. However, after plaintiffs' motion for emergency relief [4] was denied, BOE completed

the printing of election ballots, and the election has already taken place. The changed signature requirement, passed as emergency legislation, applies only to this election and expires on November 11, 2020, 90 days following its passage. *See* D.C. Code § 1-204.12(a). The only requested relief this Court could possibly grant—a declaratory judgment—now has no basis. *See De La Fuente v. Lamone*, Civil Action No. 16-2743, 2017 WL 2439143, at *6 (D. Md. June 5, 2017) (denying as moot request for declaratory judgment that Maryland signature gathering requirement was unconstitutional where legislative change would take effect before next election). Without a live controversy, this Court lacks subject matter jurisdiction over this case.

## 2.   No Mootness Exception Applies.

Although the mootness doctrine has rare exceptions, the party opposing dismissal on mootness grounds bears the burden of establishing an exception. *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019) (citing *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010)). Plaintiffs cannot meet that burden here.

Two primary exceptions may permit a case to proceed when it would otherwise be moot. The first is the "voluntary cessation" exception, applicable when a once-existing controversy has only abated because of the defendant's voluntary change in conduct. *See Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016). That exception does not apply here; the controversy alleged by plaintiffs has ceased because election ballots have long been finalized, and the law that plaintiffs challenge will not govern future elections. There is no conduct at issue that the District could have ceased.

9

The second exception applies to a narrow class of injuries "capable of repetition yet evading review." *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009). Only the rarest of cases will fall within this exception. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (doctrine "applies only in exceptional situations"). Under this exception, a case or controversy otherwise mooted may nonetheless proceed only if the plaintiff can establish two prerequisites:  "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

The second of these, the "capable of repetition" prong, itself contains two requirements. First, the plaintiff must show a likelihood of recurrence. "A 'theoretical possibility' … is not sufficient to qualify as 'capable of repetition.'" *Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 951 (D.C. Cir. 2005) (quoting *Murphy*, 455 U.S. at 482). Rather, there must be "a 'reasonable expectation' or 'demonstrated probability' that the action will recur." *Id.* Second, the plaintiff must show that the action likely to recur will be "the 'precise controversy' between the parties." *Planned Parenthood of Wisc., Inc. v. Azar*, 942 F.3d 512, 517 (D.C. Cir. 2019) (quoting *People for the Ethical Treatment of Animals v. Gittens*, 396 F.3d 416, 422 (D.C. Cir. 2005)).

Plaintiffs cannot establish a likelihood of recurrence based on a single emergency enactment that by its terms (1) is applicable only to the November 2020 election, and (2) expires on November 11, 2020. Cases that are capable of repetition

at the very least involve multiple occurrences of injury in the past—and often also include robust evidence of likely recurrence in the future. *See, e.g.*, *Del Monte*, 570 F.3d at 324 (finding agency's license application processing delay was capable of repetition where record showed agency had delayed plaintiff's similar applications "on five separate occasions in the past" and agency's own public statements warned of future delays); *Turner v. Rogers*, 564 U.S. 431, 440 (2011) (petitioner's subjection to family court civil contempt proceedings capable of repetition where petitioner repeatedly failed to make child support payments and was repeatedly subject to civil contempt proceedings resulting in prison time). Plaintiffs here cannot show either a "reasonable expectation" or a "demonstrated probability" of future injury when the law they challenge will not be applicable to any future elections. *See Beethoven.com*, 394 F.3d at 951.

With both mootness exceptions inapplicable, plaintiffs' case remains moot and not within the Court's subject matter jurisdiction. The Complaint should be dismissed.

### B.   Plaintiffs Lack Standing To Bring the Claims They Have Raised.

To have standing to sue, a plaintiff must allege he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Comm. on the Judiciary of the United States House of Representatives v. McGahn*, 968 F.3d 755, 763 (D.C. Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "An injury is not redressable where the 'only apparent avenue of redress for plaintiffs'

claimed injuries … is unavailable.'" *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 845 F. Supp. 2d 288, 299 (D.D.C. 2012) (quoting *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010)). The Court may act only to redress injuries that are fairly traceable "to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

Plaintiffs here challenge the timing of the July 2020 Amendment, contending that their rights were violated when the legislation was signed by the Mayor after the August 5, 2020 petition deadline had passed. Compl. ¶ 50. Plaintiffs, however, name only BOE as a defendant in this case. But BOE did not compose or enact the July 2020 Amendment, and the Complaint contains no allegations of any unconstitutional conduct by BOE, let alone conduct that is "fairly traceable" to plaintiffs' alleged injury. *See Simon*, 426 U.S. at 41-42. Plaintiffs fail to show that their alleged injury was a direct result of BOE's conduct, and thus, plaintiffs lack standing. *Id.* at 44.

Plaintiffs also cannot show that their injury will be redressed by a favorable decision on the merits. *Judicial Watch*, 845 F. Supp. 2d at 298-99 (citing *Lujan*, 504 U.S. at 561). Plaintiffs seek "a permanent injunction prohibiting the District from altering signature requirements for third party presidential candidates in future elections without providing at least 2 weeks of notice to comply with the new signature requirement." Compl. at 16. But neither the D.C. Council nor the District of Columbia is a party to this case, and the Court "lacks the authority to issue a

12

judgment that would bind a non-party." *Pinson v. United States Dep't of Justice*, 273 F. Supp. 3d 1, 8 n.9 (D.D.C. 2017) (internal quotation marks omitted) (quoting *Ali v. Carnegie Inst. of Washington*, 309 F.R.D. 77, 84 (D.D.C. 2015), *aff'd*, 684 F. App'x 985 (Fed. Cir. 2017)); *see also Taylor v. Sturgell*, 553 U.S. 880, 898 (2008) ("[O]ur decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party."). This Court is limited to granting relief against BOE, the only named defendant, and BOE cannot control the Council's legislative enactments. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) ("If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable."); *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" (internal quotation marks omitted).); *cf. St. Pierre v. Norton*, 498 F. Supp. 2d 214, 221 (D.D.C. 2007) (dismissing prospective tribal members' lawsuit challenging Bureau of Indian Affairs tribal membership criteria where tribe was not named as a party, reasoning that "[e]ven if the Court were to grant Plaintiffs' requested relief, the Tribe itself, as a non-party to this lawsuit, would not be bound by the Court's Order"). Plaintiffs therefore lack standing to seek the only form of relief the Court could even possibly grant at this juncture. That is enough for dismissal. *See DeSilva v. Donovan*, 81 F. Supp. 3d 20, 24 (D.D.C. 2015) ("[When] the Court finds that Plaintiffs' injuries are not redressable, there is no need to address the injury or causation elements of standing.").

## II.   Plaintiffs' Lawsuit Warrants Dismissal for Failure To State a Claim.

### A.   Plaintiffs Have Not Stated a Claim Under the First or Fourteenth Amendments.

Even if this Court has jurisdiction, plaintiffs have not stated a claim for relief. The crux of plaintiffs' lawsuit alleges inadequate notice about the July 2020 Amendment, a claim they attempt to raise under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.[3] Compl. ¶¶ 51-54, 62-65. Their claims, however, do not fit this rubric and cannot succeed.

State laws imposing ballot access restrictions implicate two "overlapping[] kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)). These rights, arising under the First Amendment and the Equal Protection Clause, are analyzed together as a general right to political association "without resort to a separate Equal Protection Clause analysis." *Libertarian Party v. District of Columbia Bd. of Elections & Ethics (Libertarian Party I)*, 768 F. Supp. 2d 174, 180 (D.D.C. 2011).

Although plaintiffs try to invoke this legal framework, the claims raised in their Complaint do not challenge a discrete ballot access restriction as unconstitutionally burdensome. Plaintiffs instead take issue with what they contend was insufficient notice ahead of the July 2020 Amendment. *See* Compl. ¶¶ 52, 63.

---

[3]     "[T]he Equal Protection Clause of the Fourteenth Amendment applies to the District of Columbia through the Due Process Clause of the Fifth Amendment." *Dixon v. District of Columbia*, 666 F.3d 1337, 1339 (D.C. Cir. 2011).

That is not a cognizable ballot-access claim under the First and Fourteenth Amendments. Even if it were, however, they have not stated a claim for relief.

Central to election law is the premise that governments "may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). Although arising under the First and Fourteenth Amendments, such regulations are generally subject only to rational basis review, and a State's important regulatory interests will usually suffice under that standard. *See Libertarian Party v. District of Columbia Bd. of Elections & Ethics (Libertarian Party II)*, 682 F.3d 72, 74 (D.C. Cir. 2012) (District regulation prohibiting disclosure of vote totals for write-in candidates "no doubt impose[d] burdens on write-in candidates" but was not "severe, or anything but reasonable and nondiscriminatory" (citation, alteration, and internal quotation marks omitted)). Only if it "impos[es] severe burdens on plaintiffs' rights" will an election regulation be subject to strict scrutiny. *Timmons*, 520 U.S. at 358; *see also Clements v. Fashing*, 457 U.S. 957, 963 (1982).

Under a rational basis analysis, the government's regulatory interests suffice to justify "reasonable, nondiscriminatory restrictions" on ballot access for third-party candidates. *Timmons*, 520 U.S. at 358. Notably, states (and the District) have "the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Anderson*,

460 U.S. at 788 n.9. Accordingly, the Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." *Burdick*, 504 U.S. at 438. This is true of ballot-access laws requiring third-party and independent candidates to acquire specified numbers of signatures. *See Libertarian Party of New Hampshire v. Gardner*, 843 F.3d 20, 26 (1st Cir. 2016) ("Neither the Supreme Court nor any circuit court has struck down a statewide ballot-access regime on the grounds that a signature requirement of five percent (or less) is too much … .").

Ballot-access laws fail as unconstitutional only in rare circumstances involving exceptionally burdensome requirements. *See, e.g.*, *Williams*, 393 U.S. at 24-25 (Ohio ballot-access regime unconstitutional where law required third-party candidates to obtain signatures from 15 percent of the electorate and imposed onerous procedural requirements such as convention delegate quotas). Notably, the Supreme Court has upheld signature-gathering requirements more demanding than the District's pre-pandemic one-percent requirement. In *Jenness v. Fortson*, for instance, the Supreme Court upheld as constitutional a Georgia election code provision requiring non-major-party candidates for office to obtain signatures from 5 percent of the state's registered voters. 403 U.S. 431 (1971). Contrasting Georgia's requirements with those at issue in *Williams*, the Court reasoned that any candidate could choose any number of routes to running for office in Georgia, and that under Georgia's straightforward legal regime, candidates for governor and President had successfully petitioned to appear on the ballot in the years leading up to the Court's decision. *Id.* at 439. The Court

acknowledged that the five percent signature requirement was "somewhat higher" than the requirements in other states but concluded this was offset "by the fact that Georgia has imposed no arbitrary restrictions whatever upon the eligibility of any registered voter to sign as many nominating petitions as he wishes." *Id.* at 442; *see also De La Fuente v. Padilla*, 930 F.3d 1101, 1106-07 (9th Cir. 2019) (rejecting constitutional challenge to California's one-percent signature-gathering requirement).

The District's signature-gathering requirement was constitutional even before the D.C. Council chose to reduce the requirement to 250 valid signatures. *See* D.C. Code § 1-1001.08(f); 3 DCMR §§ 1500-1508; *see also* H. Rep. No. 93-258, at 3 (Congressional rationale for District's previous one-percent requirement was to lessen the burden on third-party presidential candidates and bring the District in line with the standard practices of other states); S. Rep. No. 93-371, at 3 (same). In any case, plaintiffs' rights of political association were not violated when the Council lowered the signature requirement further—doing so more than a week before the deadline to submit a petition. Plaintiffs had plenty of notice to gather the required signatures, especially given that they could have gathered them electronically in the time allotted. *See* D.C. Code § 1-1001.08(b)(3A). The First and Fourteenth Amendments did not compel the District to do anything differently.

Moreover, any burden imposed by the signature-gathering requirement was not severe, pre- or post-reduction. The Council's May 13, 2020 Emergency Act included a provision permitting third-party presidential candidates to gather

17

signatures electronically ahead of the November 2020 election—a fact plaintiffs' Complaint ignores. *See* May 13, 2020 Emergency Act, 67 D.C. Reg. 5235. As other courts have indicated, such an enactment is precisely the kind of safeguard that ensures the rights of third-party candidates remain protected during the pandemic. *See Libertarian Party of Ill. v. Pritzker*, 455 F. Supp. 3d 738, 745 (N.D. Ill. 2020) ("[P]ermitting candidates to submit physical or electronic copies of petitions accommodates the various practical barriers to collecting signatures at this time."); *see also id.* (identifying other jurisdictions that have permitted electronic signature gathering in light of COVID-19). And even if a lower signature requirement "may facilitate further speech and association[,] … that alone does not render the regulation a severe burden." *Libertarian Party II*, 682 F.3d at 75. This is especially true when candidates may gather signatures electronically. A ballot requirement does not violate the Constitution just because it may be "inconvenient for candidates unable to obtain signatures from one percent of District voters in advance of the election." *Id.*[4]

---

[4]     The relevant interests here also go beyond just the District's, as it was Congress that enacted the signature requirement. Under its mandate as set out in the 23rd Amendment, Congress passed the 1961 Amendment to create legislation "by which a party might have its electors (later changed to candidates) placed on the ballot." *Kamins v. Bd. of Elections for the District of Columbia*, 324 A.2d 187, 191 (D.C. 1974) (internal quotation marks omitted). Congress sought to ensure that District residents "should be provided the cherished right to vote in a national election," and "to adopt procedures that will allow the greatest number of responsible and qualified voters to cast their ballot." *Id.* (quoting S. Rep. No. 869 (1961)). The purpose of imposing a signature requirement on third-party presidential candidates

> was not to restrict the right of citizens to vote for candidates for whom
> qualified electors had been appointed but, rather, to prevent the

The District's signature requirement—both the previous one-percent threshold and the reduction to 250 required signatures—gave third-party presidential candidates ample notice of a reasonable election regulation that did not violate plaintiffs' free association or equal protection rights. Then and now, the signature requirement does not prevent third-party candidates like Mr. De La Fuente from running for office and does not prevent his supporters from voting for him or expressing their political views. *Jenness*, 403 U.S. at 438, 440. The District, like any state, may require candidates to make "some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot." *Id.* at 442. Congress believed one percent was a reasonable threshold. *See* H. Rep. No. 93-258, at 3; S. Rep. No. 93-371, at 3. And, again, the D.C. Council provided another safeguard by permitting candidates to gather electronic signatures. Plaintiffs cannot succeed on their First and Fourteenth Amendment claims.

---

necessity of printing on the ballot the names of candidates who are neither the nominees of the major parties nor able to muster the necessary number of signatures (now one percent) of registered voters required under [the law.]

*Id.* at 192. Congress, in other words, acted to "limit the number of names on the ballot by 'requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot … .'" *Id.* (quoting *Jenness*, 403 U.S. at 442). "The governmental interest served by this limitation is to avoid 'confusion, deception, and even frustration of the democratic process at the general election.'" *Id.* (quoting *Jenness*, 403 U.S. at 442). The requirement at issue here thus expresses not just the District's own judgments, but also Congress's judgment about how best to effectuate orderly elections in the District.

**B.**     **The District Did Not Violate Plaintiffs' Due Process Rights.**

Plaintiffs contend that in reducing the signature requirement for third-party presidential candidates after the deadline to file nominating petitions, the District violated their "fundamental right to notice to determine what the law requires to secure access to the general election ballot," implicating their due process rights.[5] Compl. ¶¶ 57-60. Plaintiffs are incorrect.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Plaintiffs had no protected interest in notice of the reduced signature-requirement, nor was the District required to extend the August 5, 2020 nominating petition deadline after lowering the signature-gathering requirement from 5,007 to 250 signatures. The hallmark of procedural due process is whether a sufficient review process exists before any such deprivation. *Id.* at 335 (establishing a four-factor test for determining whether review procedures adequately protect constitutional interests).

Even if Mr. De La Fuente did have a protected interest in seeking ballot access, the District never impeded him from collecting signatures or submitting a nominating petition. In fact, the Council made it easier for all candidates when it permitted signatures to be gathered electronically in May 2020. *See* D.C. Code § 1-

---

[5]     Plaintiffs raise their due process claim under the Fourteenth Amendment, but only the Due Process Clause of the Fifth Amendment applies to the District. *See Butera v. District of Columbia*, 235 F.3d 637, 645 n.7 (D.C. Cir. 2001).

1001.08(b)(3A). Further, the Council publicly passed the July 2020 Amendment more than a week ahead of the nomination petition deadline. *See* July 2020 Amendment Legislative History at 2.

Plaintiffs cannot show they were deprived of any liberty or property interest, or any review process meant to safeguard such a right. Due process guarantees generally apply when the government "seeks to remove or significantly alter [a] protected status" it has established by law. *Paul v. Davis*, 424 U.S. 693, 710-11 (1976). Courts should consider whether plaintiffs have identified "a right or status previously recognized by state law [that] was distinctly altered or extinguished. *Id.* at 711. But even then, courts have declined to interfere with state and local government regulation in certain domains—such as election law. *See De La Fuente Guerra v. Toulouse-Oliver*, 752 F. App'x 579, 582 (10th Cir. 2018) ("In the absence of authority addressing the process required when a state rejects a petition to be placed on a primary ballot, we decline to infer that due process imposes such a requirement under these circumstances."). Plaintiffs have not alleged a colorable due process violation, and their Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion and dismiss plaintiffs' Complaint with prejudice.

Dated:  November 5, 2020.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Micah Bluming*
MICAH BLUMING [1618961]
SHANI C. BROWN [1617726]
Assistant Attorneys General
400 Sixth Street, N.W., Suite 10100
Washington, D.C.  20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
shani.brown@dc.gov

*Counsel for Defendant*